**No. 26-2459**

*In the*

# United States Court of Appeals

*for the*

# Eighth Circuit

---

Chris Wolters,

Plaintiff – Appellee,

v.

Sweepsteaks Limited d/b/a Stake.us,

Defendant – Appellant.

---

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA
Case No. 0:25-cv-03280-JRT-JFD
Hon. John R. Tunheim

---

**APPELLANT'S OPENING BRIEF**

---


Aaron D. Van Oort
Grace Rybak
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Aaron.VanOort@FaegreDrinker.com
Grace.Rybak@FaegreDrinker.com
Phone: (612) 766-7000
Fax: (612) 766-1600

A. Jeff. Ifrah
Kim Conroy
John Mikuta
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Jeff@IfrahLaw.com
KConroy@IfrahLaw.com
JMikuta@IfrahLaw.com
Phone: (202) 524-4140

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

When Chris Wolters joined Sweepsteaks Limited's online social gaming platform, he agreed to arbitrate all disputes by affirmatively checking a box agreeing to the Terms and Conditions. He also unambiguously agreed to delegate all threshold questions of validity and enforceability of the Terms and Conditions to the arbitrator. Despite having entered that agreement, Wolters filed this suit. And despite the parties' unmistakable delegation of questions of validity to the arbitrator, the district court ruled on them. That was an error, and this Court should reverse.

As this Court recently and rightly declared in reversing another order denying a motion to compel arbitration issued by the same district court, "[c]hallenges to the validity of an agreement to arbitrate are distinct from challenges to the entire contract." *Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 772 (8th Cir. 2022). Challenges to the validity of the contract therefore must be sent to arbitration. This is true as a matter of federal substantive law, and the parties here could not and did not agree otherwise. The district court also wrongly found a question of fact regarding contract formation, despite objective evidence of consent and counsel's concession that Wolters "does not necessarily dispute whether he signed the contract."

Four previous times, the Court has reversed this district court judge for denying motions to compel arbitration. The Court should do so again. Sweepsteaks Limited requests 15 minutes of oral argument per side.



Appellate Case: 26-2459 Page: 2 Date Filed: 09/11/2026 Entry ID: 5682561

## CORPORATE DISCLOSURE STATEMENT

Appellant Sweepsteaks Limited has a parent corporation, Well Done STK Limited. No publicly held corporation owns 10 percent or more of Sweepsteaks Limited's or Well Done STK's stock. *See* Fed. R. App. P. 26.1(a); 8th Cir. R. 26.1A.



Appellate Case: 26-2459 Page: 3 Date Filed: 09/11/2026 Entry ID: 5682561

## TABLE OF CONTENTS


JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 3

SUMMARY OF THE ARGUMENT .......... 8

ARGUMENT .......... 9

I. All Disputes Between Wolters and Sweepsteaks Should Be Directed To Arbitration, And This Litigation Should Be Stayed .......... 10

A. The Parties validly formed an arbitration agreement, and the agreement requires arbitration of all disputes Wolters raises. .......... 11

B. The district court erred in ruling on Wolters' challenge to the validity of the contract, because the parties delegated that dispute to the arbitrator .......... 16

C. The district court erred in finding a material dispute of fact over contract formation. .......... 20

D. Wolters' argument that the arbitration clause is unconscionable must be decided by the arbitrator. .......... 24

CONCLUSION .......... 24

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 10

*Asia Pac. Indus. Corp. v. Rainforest Café, Inc.*,
380 F.3d 383 (8th Cir. 2004) .......... 2, 11, 20

*Bailey v. Ameriquest Mortg. Co.*,
346 F.3d 821 (8th Cir. 2003) .......... 9

*Benchmark Ins. Co. v. SUNZ Ins. Co.*,
36 F.4th 766 (8th Cir. 2022) .......... *passim*

*Boyle v. Sweepsteaks Ltd.*,
No. 25-00302, 2025 WL 1674480 (C.D. Cal. May 19, 2025) .......... 19

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... *passim*

*Chergosky v. Crosstown Bell, Inc.*,
463 N.W.2d 522 (Minn. 1990) .......... 18

*City of Benkelman v. Baseline Eng'g Corp.*,
867 F.3d 875 (8th Cir. 2017) .......... 20

*Courtright v. Epic Games, Inc.*,
766 F. Supp. 3d 873 (W.D. Mo. 2025) .......... 21

*Current Tech. Concepts, Inc. v. Irie Enters., Inc.*,
530 N.W.2d 539 (Minn. 1995) .......... 17

*Dixon v. Sweepsteaks Ltd.*,
No. 25-09641 (D.S.C. May 27, 2026) .......... 19

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) .......... 14

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 10



Appellate Case: 26-2459 Page: 5 Date Filed: 09/11/2026 Entry ID: 5682561

*Erickson v. Nationstar Mortg., LLC*,
31 F.4th 1044 (8th Cir. 2022) .......... 2, 22

*Fallo v. High-Tech Inst.*,
559 F.3d 874 (8th Cir. 2009) .......... 14

*Foster v. Walmart, Inc.*,
15 F.4th 860 (8th Cir. 2021) .......... 12, 21

*Hall v. Sweepsteakes Ltd.*,
No. 25-00345, 2026 WL 701560 (M.D. Ala. Mar. 12, 2026) .......... 19

*Hamby v. Iowa*,
--- F.4th ---, 2026 WL 2223865 (8th Cir. Aug. 3, 2026) .......... 23, 24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 12

*JES Farms P'ship v. Indigo Ag Inc.*,
116 F.4th 733 (8th Cir. 2024) .......... 13

*Jones v. Experian Info. Sols., Inc.*,
No. 23-03887, 2025 WL 227198 (D. Minn. Jan. 7, 2025) .......... 21, 23

*Jones v. Wellpath, LLC*,
77 F.4th 658 (8th Cir. 2023) .......... 20

*Jordan v. Best Buy Co.*,
No. 24-01066, 2025 WL 580894 (D. Minn. Feb. 21, 2025) .......... 21, 23

*Lackie Drug Store, Inc. v. OptumRx, Inc.*,
143 F.4th 985 (8th Cir. 2025) .......... 14, 16

*Lundeen v. Cordner*,
354 F.2d 401 (8th Cir. 1966) .......... 22

*M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*,
676 F.3d 1153 (8th Cir. 2012) .......... 13

*M.M. v. Sweepsteakes Ltd.*,
No. 25-11481, 2025 WL 3240413 (D. Mass. Nov. 20, 2025) .......... 19

*McLeod v. Gen. Mills, Inc.*,
856 F.3d 1160 (8th Cir. 2017) .......... 9, 10

*Nationwide Prop. & Cas. Ins. Co. v. Faircloth*,
845 F.3d 378 (8th Cir. 2016) .................................................................... 22

*Parm v. Bluestem Brands, Inc.*,
898 F.3d 869 (8th Cir. 2018) ..........................................................9, 11, 13

*Pine River State Bank v. Mettille*,
333 N.W.2d 622 (Minn. 1983)...................................................................... 11

*Placzek v. Mayo Clinic*,
18 F.4th 1010 (8th Cir. 2021) ...................................................................... 17

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010).............................................................................*passim*

*Ridley v. Sweepsteaks Ltd.*,
No. 25-02511, 2026 WL 2201149 (E.D. Va. July 30, 2026).................................. 19

*Rohr v. Reliance Bank*,
826 F.3d 1046 (8th Cir. 2016) ...................................................................... 22

*SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*,
795 N.W.2d 855 (Minn. 2011)...................................................................... 11

*Stewart v. Rise, Inc.*,
791 F.3d 849 (8th Cir. 2015) ...................................................................... 22

*Storms, Inc. v. Mathy Constr. Co.*,
883 N.W.2d 772 (Minn. 2016)...................................................................... 17

*United States v. 3234 Wash. Ave. N.*,
480 F.3d 841 (8th Cir. 2007) ...................................................................... 22

*Wilson v. Miller*,
821 F.3d 963 (8th Cir. 2016) ...................................................................... 23

*Zean v. Comcast Broadband Sec., LLC*,
322 F. Supp. 3d 913 (D. Minn. 2018) ............................................................ 23

**Statutes, Rules & Regulations**

9 U.S.C. § 2 ............................................................................................ 10

9 U.S.C. §§ 2–4 (FAA)..........................................................................1, 2, 3, 10

9 U.S.C. § 3 .......... 10, 15

9 U.S.C. § 4 .......... 10, 15

9 U.S.C. § 16(a)(1)(B) .......... 1

28 U.S.C. § 1294 .......... 1

28 U.S.C. § 1332(d) .......... 1

Fed. R. Civ. P. 56 .......... 2, 20, 22

Minn. Stat. § 325D.44 .......... 6

Minn. Stat. § 325F.67 .......... 6

Minn. Stat. § 325F.69 .......... 6

Minn. Stat. § 541.20 .......... 5



Appellate Case: 26-2459 Page: 8 Date Filed: 09/11/2026 Entry ID: 5682561

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under the federal diversity jurisdiction statute, 28 U.S.C. § 1332(d), because the case is a putative class action involving more than 100 members, the parties are diverse, and Wolters alleges that the amount in controversy exceeds the jurisdictional minimum of $5 million.

This Court has appellate jurisdiction under 28 U.S.C. § 1294 and 9 U.S.C. § 16(a)(1)(B). *See Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 770 (8th Cir. 2022). Sweepsteaks Limited timely filed a notice of appeal on July 15, 2026, from a July 1, 2026, order of the district court that denied Sweepsteaks Limited's motion to compel arbitration under the Federal Arbitration Act.

## STATEMENT OF THE ISSUES

1. **Delegation to the arbitrator and severability.** The parties agreed to arbitrate "any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and Conditions." (App.84; R. Doc. 16-1, at 28 § 26.6(a).) Wolters argued that the Terms and Conditions were invalid as addressing the subject of gambling and so the arbitration agreement was invalid as well, but "[t]he Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark*, 36 F.4th at 772 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)). Did the district court err in considering the contract's validity instead of sending that issue to arbitration?

**Apposite Statute**

- Federal Arbitration Act, 9 U.S.C. §§ 2–4.

**Apposite Cases**

- *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006).
- *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010).

**2. Contract formation.** Sweepsteaks submitted evidence that no user could access its platform without checking a box next to the statement "I have read and agree to the terms and conditions," and that Wolters checked that box when he created his account. (App.52; R. Doc. 15, at 3 ¶ 11.) Wolters presented no evidence. At oral argument on the motion to compel, counsel for Wolters stated that he "does not necessarily dispute whether he signed the contract." (App.314; R. Doc. 31, at 19:16–17.) Did the district court err by finding a disputed issue of fact on contract formation?

**Apposite Rule**

- Fed. R. Civ. P. 56.

**Apposite Cases**

- *Asia Pacific Industrial Corp. v. Rainforest Café, Inc.*, 380 F.3d 383 (8th Cir. 2004).
- *Erickson v. Nationstar Mortgage, LLC*, 31 F.4th 1044 (8th Cir. 2022).

**3. Delegation to the arbitrator.** The parties' arbitration agreement extends to "any and all Disputes, including without limitation any question regarding the existence,

validity, enforceability, or termination of . . . this clause 26 (Dispute Resolution and Agreement to Arbitrate)." (App.84; R. Doc. 16-1, at 28 § 26.6(a).) Wolters challenged aspects of the arbitration clause as unconscionable. The Supreme Court has held that an unconscionability challenge to an arbitration clause must be decided by an arbitrator when the parties have agreed to arbitrate disputes over enforceability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Should Wolters' argument that the arbitration clause is unconscionable be decided by the arbitrator?

**Apposite Statute**

- Federal Arbitration Act, 9 U.S.C. §§ 2–4.

**Apposite Case**

- *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010).

## STATEMENT OF THE CASE

On November 25, 2022, Plaintiff Chris Wolters created a user account on Stake.us. (App.51; R. Doc. 15, at 2 ¶ 8.) Stake.us is an online social gaming platform operated by Defendant Sweepsteaks Limited that provides interactive games. (App.50; R. Doc. 15, at 1 ¶ 4.)

To create a Stake.us account, users must agree to the platform's Terms and Conditions. (App.52; R. Doc. 15, at 3 ¶ 11.) Specifically, they must check a box next to the statement "I have read and agree to the terms and conditions." (*Id.*) Wolters checked the box and created his account. (App.51; R. Doc. 15, at 2 ¶ 8.) He also provided his email address and date of birth, which Sweepsteaks Limited has in its records. (*Id.* ¶ 10.)



Appellate Case: 26-2459 Page: 11 Date Filed: 09/11/2026 Entry ID: 5682561

The Terms and Conditions that Wolters "read and agree[d] to" included an arbitration agreement. In the agreement, Wolters agreed to arbitrate not only the merits of his disputes with Sweepsteaks Limited, but also threshold questions of validity and enforceability of both the Terms and Conditions generally and the arbitration agreement specifically. The agreement states, in relevant part:

> **<u>We Both Agree to Arbitrate</u>. By agreeing to these Terms and Conditions, both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and Conditions and/or this clause 26 (Dispute Resolution and Agreement to Arbitrate), shall be referred to and finally resolved by arbitration administered by the American Arbitration Association (AAA), the Rules of which are deemed to be incorporated by reference into this clause.** In agreeing to this binding commitment to arbitrate your Disputes, you agree that you waive any right to proceed in a court of law or to have your claims heard by a jury.

(App.84; R. Doc. 16-1, at 28 § 26.6(a)) (emphasis in original).

The term "Disputes" is also expressly defined to embrace challenges to "the validity" of the arbitration agreement:

> By agreeing to these Terms and Conditions, you agree that any and all past, present and future disputes, claims or causes of action between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, which arise out of or are related in any way to these Terms and Conditions, the formation of these Terms and Conditions, the validity or scope of this clause 26 (Dispute Resolution and Agreement to Arbitrate), your Participation in or other access to or use of the Games or the Platform, or any other dispute between you and Stake or any of its affiliates, subsidiaries, ultimate parent and parent companies, partners, officers, directors, employees, contractors, shareholders, agents, licensors, subcontractors or suppliers, including as to the arbitrability of any of the



Appellate Case: 26-2459 Page: 12 Date Filed: 09/11/2026 Entry ID: 5682561

> foregoing, and whether arising prior to or after your agreement to this clause 26 (Dispute Resolution and Agreement to Arbitrate) (all of the foregoing, collectively "Disputes"), will be governed by the procedure set out below.

(App.83; R. Doc. 16-1, at 27 § 26.3.)

After agreeing to the Terms and Conditions, Wolters began using the Stake.us platform. About six months into his use, Sweepsteaks Limited required him to agree to updated Terms and Conditions as a condition of continuing to use the platform. (App.52; R. Doc. 15, at 3 ¶ 12.) When Wolters visited the site on May 18, 2023, he was presented with a window containing the new Terms and required to scroll through the entirety of them, then click a box agreeing: "I have read and agree to the Terms and Conditions." (*Id.*) The arbitration agreement language in the new Terms was identical in all relevant respects to the November 2022 Terms and Conditions. (*See* App.83; R. Doc. 16-1, at 27 § 26.3; App.84; R. Doc. 16-1, at 28 § 26.6).

Wolters used Stake.us from 2022 up through April 2025. (App.51; R. Doc. 15, at 2 ¶ 8.) On August 15, 2025, Wolters ignored the arbitration agreement and filed this putative class action. (App.1–App.26; R. Doc. 1.) In his Complaint, Wolters claimed that the games on Stake.us violate Minnesota's gambling and consumer protection laws and that Sweepsteaks Limited should therefore be required to refund profits and pay damages and penalties. He asserted five supporting causes of action under Minnesota state law, citing a gambling prohibition, Minn. Stat. § 541.20, three consumer protection



Appellate Case: 26-2459 Page: 13 Date Filed: 09/11/2026 Entry ID: 5682561

statutes, Minn. Stat. §§ 325F.69, 325D.44, 325F.67, and unjust enrichment. (App.19–App.24; R. Doc. 1, at 19–24 ¶¶ 83–117.)

Sweepsteaks Limited promptly moved to compel arbitration and stay this litigation. In support of the motion, Sweepsteaks Limited offered a declaration from Edward Craven, along with supporting exhibits that included the Terms and Conditions Wolters had agreed to. (App.50–App.228; R. Docs. 15–16-5.) Craven's declaration established the facts described above.

Wolters opposed arbitration on three grounds, arguing that (1) he had not formed any valid agreement with Sweepsteaks Limited because "Minnesota's prohibition of unlicensed gambling forecloses the formation of any such agreement," (2) Sweepsteaks Limited had not proved he had consented to the arbitration agreement, and (3) the arbitration agreement was unconscionable. (App.238; R. Doc. 17 at 10; App.260; R. Doc. 17, at 32; App.263; R. Doc. 17, at 35.) Wolters submitted no evidence with his opposition, and he provided no declaration of his own disputing the Craven declaration documenting his repeated agreement to the Terms and Conditions.

The district court, the Honorable John R. Tunheim, held oral argument on the motion to compel. Judge Tunheim asked counsel for Wolters whether "Mr. Wolters disagree[s] that he signed the contract." (App.314; R. Doc. 31, at 19:14–15.) Counsel responded, "Mr. Wolters does not necessarily dispute whether he signed the contract." (*Id.* at 19:16–17.) Instead, counsel pointed to Sweepsteaks Limited's burden and argued



Appellate Case: 26-2459 Page: 14 Date Filed: 09/11/2026 Entry ID: 5682561

that it had not "provided a record that proves Mr. Wolters assented to the terms." (*Id.* at 19:17–20.)

On July 1, 2026, the district court issued an order denying the motion to compel arbitration. (Add.1–Add.16; R. Doc. 26.) The court stated two grounds for its decision. First, the court held that, if Wolters' allegations were credited, the Terms and Conditions as a whole would be void, and this would make the arbitration clause void, too. (Add.13; R. Doc. 26, at 13.) The court acknowledged that the Supreme Court distinguishes challenges to "the validity of the agreement to arbitrate" from "challenges [to] the contract as a whole." (Add.7; R. Doc. 26, at 7 (quoting *Buckeye*, 546 U.S. at 444).) The court further acknowledged that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." (*Id.* (quoting *Rent-A-Center*, 561 U.S. at 70).) But the court concluded that the Supreme Court precedent could be distinguished because "the Arbitration Agreement is drafted in such a way that the parties' assent to arbitrate certain claims is **contingent** on the existence and validity of the 'Terms and Conditions.'" (Add.8; R. Doc. 26, at 8.) The court based this conclusion on the portion of the agreement that said, "**By agreeing to these Terms and Conditions**, both you and Stake agree" to arbitrate. (*Id.*) Although counsel for Sweepsteaks Limited had noted at oral argument that the contract in *Buckeye* likewise stated that "By signing this Agreement," the parties had agreed to arbitrate (App.306; R. Doc. 31, at 11:15–17), the court did not address that fact in its decision.

The district court briefly provided a second ground for its decision, concluding that "disputes of fact remain as to whether any contract was formed." (Add.15; R. Doc. 26, at 15.) The court based its decision on the lack of identifying information about Wolters on the face of a screenshot and a general paragraph in Craven's declaration. (Add.14; R. Doc. 26, at 14.) The court did not address either the provisions in Craven's declaration specific to Wolters or the concession of Wolters' counsel at argument that "Mr. Wolters does not necessarily dispute whether he signed the contract." (App.314; R. Doc. 31, at 19:16–17.)

The court declined to address Wolters' argument that the arbitration agreement was unconscionable. (Add.15; R. Doc. 26, at 15 n.8.)

Sweepsteaks Limited timely filed its notice of appeal on July 15, 2026.

## SUMMARY OF THE ARGUMENT

Wolters entered into a binding arbitration agreement with Sweepsteaks Limited by clicking a box to indicate acceptance of the Terms and Conditions. Those Terms and Conditions contained an arbitration agreement sending "any and all Disputes," including over threshold arbitrability issues, to arbitration. Wolters's entire case, including his arguments that the Terms and Conditions permit illegal gambling and that the arbitration clause contains unconscionable terms, must therefore be heard by an arbitrator in the first instance.

First, under Supreme Court precedent, the provision of the Terms and Conditions delegating all disputes to arbitration must be severed and separately



Appellate Case: 26-2459 Page: 16 Date Filed: 09/11/2026 Entry ID: 5682561

enforced. Wolters challenges the entire contract, not the delegation provision specifically. That challenge must be heard by an arbitrator, as the parties agreed.

Second, Sweepsteaks Limited proved contract formation through undisputed evidence. The Craven declaration and supporting exhibits proved that Sweepsteaks Limited made an offer, shown by the Terms and Conditions, and that Wolters accepted by checking a box to agree. Wolters failed to present any evidence calling the declaration into question, and summary judgment standards do not require Sweepsteaks Limited to present additional documentary evidence.

Finally, Wolters' unconscionability challenge must be heard in arbitration because the parties clearly and unmistakably delegated questions of enforceability to the arbitrator.

## ARGUMENT

In four prior appeals, this Court has reversed the same district court judge for erroneously denying motions to compel arbitration. *See Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 823–24 (8th Cir. 2003); *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1168 (8th Cir. 2017); *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 871, 878 (8th Cir. 2018); *Benchmark*, 36 F.4th at 772. In *Bailey*, this Court observed that the "court's decision is contrary to controlling decisions of the Supreme Court and this court," and "the court's analysis reflects an outmoded judicial hostility to arbitration that the Supreme Court has consistently rejected." 346 F.3d at 823. And in *Benchmark*, this Court reversed because the district court incorrectly decided "a challenge to the contract's validity that, under



Appellate Case: 26-2459 Page: 17 Date Filed: 09/11/2026 Entry ID: 5682561

*Buckeye*, shall be considered by an arbitrator, not a court." 36 F.4th at 772. The district court committed the same error here, and this Court should again reverse.

The Court "reviews a determination concerning the arbitrability of a dispute *de novo*." *McLeod*, 856 F.3d at 1163.

## I. All Disputes Between Wolters and Sweepsteaks Should Be Directed To Arbitration, And This Litigation Should Be Stayed.

Congress enacted the Federal Arbitration Act (FAA) "in response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). In the FAA, Congress "specifically directed [courts] to respect and enforce the parties' chosen arbitration procedures" by "rigorously . . . enforc[ing] arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quoting *Italian Colors*, 570 U.S. at 233).

Section 2 of the FAA thus provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Sections 3 and 4 "establish[] procedures by which federal courts implement [Section] 2's substantive rule." *Rent-A-Center*, 561 U.S. at 68. Under those provisions, district courts "shall" stay litigation where "the issue involved in such suit or proceeding is referable to arbitration," 9 U.S.C. § 3, and issue "order[s] directing the parties to proceed to arbitration in accordance with the terms of the agreement," *id.* § 4.

### A. The Parties validly formed an arbitration agreement, and the agreement requires arbitration of all disputes Wolters raises.

When this Court "review[s] an order denying a motion to compel arbitration," it asks "[t]wo questions": (1) "whether the parties entered a valid arbitration agreement"; and (2) "whether the parties' particular dispute falls within the scope of the arbitration agreement." *Parm*, 898 F.3d at 873 (quotation marks omitted). Here, the answer to both questions is "yes."

**First**, Wolters and Sweepsteaks Limited formed a valid agreement to arbitrate. "[O]rdinary state-law contract principles" govern formation. *Asia Pac. Indus. Corp.*, 380 F.3d at 385. Under Minnesota law (which the parties agree governs), forming a contract requires (1) an offer that is "definite in form" and "communicated to the offeree," (2) "acceptance of the offer," and (3) "consideration." *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). Offer and acceptance together show "mutual assent," or a meeting of the minds on the essential elements of the contract, and "[w]hether mutual assent exists is tested under an objective standard," *SCI Minn. Funeral Servs., Inc. v. Washburn-McReavy Funeral Corp.*, 795 N.W.2d 855, 864 (Minn. 2011), meaning it is "judged by the words and actions of the parties," *Asia Pac. Indus. Corp.*, 380 F.3d at 385 (applying Minnesota law).

Here, Sweepsteaks Limited made a definite offer to arbitrate "any and all Disputes." (App.84; R. Doc. 16-1, at 28 § 26.6(a).) It specified that Wolters would accept the offer "[b]y agreeing to these Terms and Conditions." (*Id.*) And Wolters did



Appellate Case: 26-2459 Page: 19 Date Filed: 09/11/2026 Entry ID: 5682561

so by checking a box next to the statement: "I have read and agree to the terms and conditions." (App.51; R. Doc. 15, at 2 ¶ 8; App.52; R. Doc. 15, at 3 ¶ 11.) By checking the box, Wolters "gave [his] assent in exactly the way the arbitration provision described." *Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021). Under Minnesota's objective approach, Wolters accepted Sweepsteaks' offer, and because the parties gave consideration through their mutual agreement to arbitrate (among other terms), a contract was validly formed.

**Second**, all of the disputes Wolters raises in this case fall within the scope of the agreement to arbitrate. The merits of Wolters' claims against Sweepsteaks about allegedly illegal gambling plainly fall within the scope of the agreement; no one challenges that. But his challenges to the validity and enforceability of the Terms and Conditions and arbitration clause also fall within the scope of the agreement.

Parties can "agree to arbitrate 'gateway' questions of 'arbitrability,'" *Rent-A-Center*, 561 U.S. at 68–69, "so long as the parties' agreement does so by 'clear and unmistakable' evidence," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Among the gateway questions the parties can agree to arbitrate are questions about the validity of the contract as a whole, because "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye*, 546 U.S. at 445. Moreover, parties can agree to arbitrate even questions about the validity of the arbitration provision itself, and courts must enforce

that "delegation" of authority to the arbitrator unless a party "challenge[s] the delegation provision specifically." *Rent-A-Center*, 561 U.S. at 72.

Under this law, Wolters and Sweepsteaks agreed to delegate all gateway issues to the arbitrator, including issues about the validity of both the Terms and Conditions generally and the arbitration clause specifically. Their written agreement states that "you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and Conditions and/or this clause 26 (Dispute Resolution and Agreement to Arbitrate), shall be referred to and finally resolved by arbitration." (App.84; R. Doc. 16-1, at 28 § 26.6(a).)

The plain text alone is unambiguous. It specifically names issues of "validity" and "enforceability." It references both the "Terms and Conditions" and the "Agreement to Arbitrate." It defines Disputes to include all disputes "which arise out of or are related in any way" to the Terms and Conditions, language that this Court has called "the broadest language the parties could reasonably use to subject their disputes" to arbitration. *See Parm*, 898 F.3d at 874. And it states that those Disputes, along with "any and all" others, "shall be referred to and finally resolved by arbitration." This Court has found unambiguous delegations on terms far less explicit than this. *See, e.g.*, *JES Farms P'ship v. Indigo Ag Inc.*, 116 F.4th 733, 736–37 (8th Cir. 2024) (so holding for agreement to arbitrate "any dispute"); *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1155, 1157 (8th Cir. 2012) (same).



Appellate Case: 26-2459 Page: 21 Date Filed: 09/11/2026 Entry ID: 5682561

The arbitration agreement also delegated gateway questions to the arbitrator by agreeing that the arbitration would be "administered by the American Arbitration Association (AAA), the Rules of which are deemed to be incorporated by reference into this clause." (App.84; R. Doc. 16-1, at 28 § 26.6(a).) This Court has repeatedly held that an "arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *see also Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998 (8th Cir. 2025).

Given the breadth of the parties' arbitration agreement, all challenges Wolters raises to the validity of the Terms and Conditions and arbitration agreement are for the arbitrator to decide, not a court. His argument that the Terms and Conditions are void in their entirety and unenforceable under Minnesota law regulating gambling is quite clearly a Dispute regarding the "validity" and "enforceability" of the "Terms and Conditions" that "shall be referred to and finally resolved by arbitration." (App.84; R. Doc. 16-1, at 28 § 26.6(a).) Under binding Supreme Court precedent, "[t]he issue of the agreement's validity is different from the issue whether any agreement between the parties was ever concluded," *Rent-A-Center*, 561 U.S. at 70 n.2 (quotation marks omitted), and "the issue of the contract's validity is considered by the arbitrator in the first instance," *Buckeye*, 546 U.S. at 445–46. What this Court recently stated in *Benchmark*



Appellate Case: 26-2459 Page: 22 Date Filed: 09/11/2026 Entry ID: 5682561

applies equally here: "This is a challenge to the contract's validity that, under *Buckeye*, shall be considered by an arbitrator, not a court." 36 F.4th at 772.

Likewise, Wolters' argument that the arbitration agreement itself is unconscionable is a Dispute regarding the "validity" and "enforceability" of the "Dispute Resolution and Agreement to Arbitrate" that "shall be referred to and finally resolved by arbitration." (App.84; R. Doc. 16-1, at 28 § 26.6(a).) In *Rent-A-Center*, the Supreme Court directly held that an unconscionability challenge to an arbitration clause must be decided by an arbitrator when the parties have so agreed. 561 U.S. at 70–71. The plaintiff there argued that the arbitration agreement was unconscionable under Nevada law. *Id.* at 66. But he had agreed to delegate to the arbitrator the authority to decide "any dispute relating to the . . . enforceability" of the arbitration agreement. *Id.* at 68. The Supreme Court held that, because he did not "challenge[] the delegation provision specifically, we must treat it as valid." *Id.* at 72. The same is true here. Wolters does not challenge the delegation provision specifically. Rather, the unconscionability arguments he raises go to the arbitration agreement generally: the representation, exhaustion, confidentiality, liability limitation, amendment, and opt-out terms. (App.252–App.263; R. Doc. 17 at 24–35.) Consequently, the Court must "enforce" the delegation provision "under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72.



Appellate Case: 26-2459 Page: 23 Date Filed: 09/11/2026 Entry ID: 5682561

In sum, the parties validly entered into an arbitration agreement that covers all the disputes Wolters raises in this case. The district court therefore should have granted Sweepsteaks' motion to compel arbitration and stay this litigation.

### B. The district court erred in ruling on Wolters' challenge to the validity of the contract, because the parties delegated that dispute to the arbitrator.

Instead of enforcing the parties' agreement, the district court itself ruled on the merits of Wolters' agreement that the Terms and Conditions were an illegal gambling agreement. This was a stark error, because "[a] court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator." *Lackie Drug Store*, 143 F.4th at 997 (quoting *Benchmark*, 36 F.4th at 772).

The district court justified its decision to reach the merits by contending that the parties had agreed to make the validity of their arbitration agreement depend on the validity of the contract as a whole. This is wrong for two reasons.

First, the rule that "an arbitration provision is severable from the remainder of the contract" is "a matter of *substantive federal arbitration law*." *Buckeye*, 546 U.S. at 445 (emphasis added). In *Rent-A-Center*, the Supreme Court therefore rejected the plaintiff's argument "that under *state* law the unconscionable clauses could not be severed from the arbitration agreement." 561 U.S. at 75–76 (emphasis added). "For the same reason," the Court added, "the *Agreement's statement* that its provisions are severable does not affect our analysis." *Id.* at 75 n.4 (emphasis added) (citation omitted). The district court should have followed the same approach here. It should have held the arbitration clause

to be severable as a matter of substantive federal arbitration law and concluded that any statement in the agreement regarding severability does not affect the analysis.

Second, the terms of the agreement unambiguously reinforce rather than undermine the severability of the arbitration provision. "[A] court must give the contract language its plain and ordinary meaning." *Placzek v. Mayo Clinic*, 18 F.4th 1010, 1018 (8th Cir. 2021) (quoting *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995)). And here, Section 27.6 of the Terms and Conditions plainly requires severability:

> If any of the Terms and Conditions are determined by any competent authority to be invalid, unlawful or unenforceable to any extent, such term, condition or provision will, to that extent, be severed from these Terms and Conditions. All remaining terms, conditions and provisions will continue to be valid to the fullest extent permitted by law.

(*See* App.86; R. Doc. 16-1, at 30 § 27.6.) That should have been dispositive, but the district court never addressed it.

In addition, the arbitration clause expressly distinguishes between challenges to the "Terms and Conditions and/or this clause 26 (Dispute Resolution and Agreement to Arbitrate)." (*See* App.84; R. Doc. 16-1, at 28 § 26.6(a).) It thereby reinforces treating those challenges as distinct. Finally, enforcing the rule of severability is necessary to give effect to the parties' clear intent to require arbitration of all challenges to the validity of the Terms and Conditions. Under Minnesota law, courts "construe a contract as a whole and attempt to harmonize all of its clauses." *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016). They likewise "attempt to avoid an interpretation of the contract



Appellate Case: 26-2459 Page: 25 Date Filed: 09/11/2026 Entry ID: 5682561

that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525–26 (Minn. 1990). The district court therefore erred in reading into the contract a non-existent anti-severability provision that would nullify the arbitration provision.

The contract provision the district court relied on did not reverse the rule of severability. Instead, it simply addressed the manner of indicating consent. The arbitration clause states: "*By agreeing to these Terms and Conditions*, both you and Stake agree that any and all Disputes . . . shall be referred to and finally resolved by arbitration . . . ." (Add.8; R. Doc. 26, at 8.) Under this provision, when Wolters checked the box indicating he agreed to the Terms and Conditions, he objectively agreed to the arbitration clause.

Pointing to the highlighted phrase, the district court reasoned that it makes the validity of the arbitration agreement depend "on the existence and validity of the 'Terms and Conditions.'" (*Id.*) No, it does not. In the very decision in which the Supreme Court announced the federal substantive rule of severability, the contract likewise began, "By signing this Agreement, you agree . . . ." *Buckeye*, 546 U.S. at 442. If the district court's logic were correct, *Buckeye* would have been decided differently. Moreover, as the Supreme Court later explained in *Rent-a-Center*, the district court's logic is wrong because "[t]he issue of the agreement's validity is different from the issue whether any agreement between the parties was ever concluded." 561 U.S. at 70 n.2. The phrase "[b]y agreeing to these Terms and Conditions" speaks to how the parties indicate consent to the agreement; it does not address whether the agreement is valid. The district court made

a category error in holding otherwise. And the error is particularly plain, given that later terms in the same arbitration provision *do expressly* address the "validity" of the Terms and Conditions and arbitration agreement and make it clear they are separate issues, as demonstrated above.

Every other district court to consider the exact arbitration agreement at issue here has held that under the plain text of the agreement, "the parties delegated issues of arbitrability to the arbitrator, [so] the question of the validity of the arbitration agreement is to be resolved by the arbitrator." *M.M. v. Sweepsteakes Ltd.*, No. 25-11481, 2025 WL 3240413, at *2 (D. Mass. Nov. 20, 2025); *see also Boyle v. Sweepsteaks Ltd.*, No. 25-00302, 2025 WL 1674480, at *4 (C.D. Cal. May 19, 2025); *Ridley v. Sweepsteaks Ltd.*, No. 25-02511, 2026 WL 2201149, at *6 (E.D. Va. July 30, 2026); *Hall v. Sweepsteakes Ltd.*, No. 25-00345, 2026 WL 701560, at *4 (M.D. Ala. Mar. 12, 2026); Order 4–6, *Dixon v. Sweepsteaks Ltd.*, No. 25-09641 (D.S.C. May 27, 2026), ECF No. 23. Those decisions were correct; the decision below was incorrect and should be reversed.

In *Benchmark*, this Court reversed the same district court judge for making the same error of ruling on a contract's validity when the parties had agreed to delegate that issue to the arbitrator. 36 F.4th at 772. The Court held that, under *Buckeye*, the challenge "shall be considered by an arbitrator, not a court." *Id.* The Court should hold the same here.



Appellate Case: 26-2459 Page: 27 Date Filed: 09/11/2026 Entry ID: 5682561

### C. The district court erred in finding a material dispute of fact over contract formation.

The district court held in the alternative that a disputed issue of fact existed over whether Wolters had agreed to the Terms and Conditions, so a trial was required. This, too, was error, because Wolters produced no evidence to dispute the evidence Sweepsteaks Limited presented that he clicked the mandatory box to consent.

Motions to compel arbitration are decided under the Rule 56 summary judgment standard when the district court considers evidence outside the pleadings. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 882 (8th Cir. 2017). This Court reviews *de novo* the district court's determination of contract formation for the arbitration agreement, *Asia Pac. Indus. Corp.*, 380 F.3d at 385, including a determination that the record presents a genuine issue of material fact, *Jones v. Wellpath, LLC*, 77 F.4th 658, 662 (8th Cir. 2023).

The factual record establishing Wolters' consent was clear, succinct, and undisputed. The declaration of Edward Craven established that Sweepsteaks Limited used a "clickwrap" approach to assure valid consent. Craven attested that his declaration was based on personal knowledge, company records, and information reported to him in the ordinary course of business by individuals with a business duty to report it accurately. (App.50; R. Doc. 15, at 1 ¶ 2.) He attested that he reviewed the company's records in preparing the declaration. (App.51; R. Doc. 15, at 2 ¶ 7.) He said that "Plaintiff and all other users of the Platform could not play any of the games on

the Platform, make any purchase on the Platform, or redeem any prizes on the Platform, unless he or she created a user account on the Platform." (*Id.* ¶ 9.) Next, "[a] user could not create an account without checking the box indicating that the user read and agreed to the Terms and Conditions." (App.52; R. Doc. 15, at 3 ¶ 11.) Finally, "Sweepsteaks Limited's records reflect that Plaintiff created a user account on the Platform on November 25, 2022." (App.51; R. Doc. 15, at 2 ¶ 8.) Those records included the information he provided, including his email address and date of birth. (*Id.* ¶ 10.)

As this Court has noted, "[i]n [clickwrap] agreements, mutual assent is rarely an issue because the user sees the list of the terms and conditions before accepting them." *Foster*, 15 F.4th at 863. Following this Court's guidance, courts in this Circuit routinely find that clickwrap arrangements establish mutual assent to arbitration agreements. *See, e.g.*, *Jordan v. Best Buy Co.*, No. 24-01066, 2025 WL 580894, at *4–5 (D. Minn. Feb. 21, 2025); *Jones v. Experian Info. Sols., Inc.*, No. 23-03887, 2025 WL 227198, at *2–3 (D. Minn. Jan. 7, 2025); *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 901–02 (W.D. Mo. 2025). The district court below should have held the same because consent was not disputed. At the hearing below, the district court asked counsel for Wolters whether "Mr. Wolters disagree[s] that he signed the contract." (App.314; R. Doc. 31, at 19:14–15.) Counsel responded, "Mr. Wolters does not necessarily dispute whether he signed the contract." (*Id.* at 19:16–17.)

Even though Wolters did not dispute the fact of clicking his agreement to the terms and did not produce any of his own evidence disputing Sweepsteaks Limited's



Appellate Case: 26-2459 Page: 29 Date Filed: 09/11/2026 Entry ID: 5682561

evidence, the district court found a fact question. This was error, because Wolters needed evidence to create a genuine dispute of fact.

Summary judgment may rest upon a declaration or affidavit, as "expressly contemplate[d]" by Rule 56. *Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015). When a party seeks summary judgment based on a declaration or affidavit, as Sweepsteaks Limited did, the non-moving party must "present evidence" to "contest[] the veracity of the movant's evidence." *United States v. 3234 Wash. Ave. N.*, 480 F.3d 841, 845 (8th Cir. 2007). "[A] party opposed to a summary judgment based upon affidavits must assume some initiative in showing that a factual issue actually exists." *Lundeen v. Cordner*, 354 F.2d 401, 409 (8th Cir. 1966). This requires "specific facts" that "undermine the witness's credibility in a material way." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022). But if the declaration is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits, then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might turn up at the trial." *Id.* (quoting *3234 Wash. Ave. N.*, 480 F.3d at 845). "[M]ere denials or allegations" cannot create a factual dispute. *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (quoting *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016)).

Wolters produced no evidence disputing the fact of his clicked consent. That ends the matter. There is no genuine dispute of fact. Courts routinely hold that an unrebutted declaration is sufficient to prove a binding arbitration agreement. *See, e.g.*,



Appellate Case: 26-2459 Page: 30 Date Filed: 09/11/2026 Entry ID: 5682561

*Jones*, 2025 WL 227198, at *2–3; *Jordan*, 2025 WL 580894, at *2 n.3; *Zean v. Comcast Broadband Sec., LLC*, 322 F. Supp. 3d 913, 918 n.3 (D. Minn. 2018).

The district court incorrectly held that Sweepsteaks Limited's evidence was "not sufficient to carry its burden" to show contract formation. (Add.14; R. Doc. 26, at 14.) But its reasoning is not supported by the record. The court criticized Exhibit A, a screenshot of user account information, for not on its face providing all the required information, stating "the screenshot does not contain Wolters's name at all, nor prove that he assented to any contract." (*Id.*) The district court appeared to misunderstand Exhibit A as addressing Wolters' original consent from his account opening in November 2022. (*Id.*) In fact, it indicated his consent to an updated agreement in May 2023, as the date on the image shows. (*Id.*) More importantly, Sweepsteaks Limited did not rely just on the exhibit. It relied on the sworn testimony in Craven's unambiguous declaration. That sworn testimony itself is "probative evidence." *See Hamby v. Iowa*, --- F.4th ---, 2026 WL 2223865, at *4 (8th Cir. Aug. 3, 2026) (quoting *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016)).

The district court attempted to undermine Craven's testimony, describing it as a "statement that Wolters presumptively would have had to sign the Terms and Conditions." (Add.14–Add.15; R. Doc. 26, at 14–15.) To the contrary, Craven unambiguously attested that no user could access the platform without checking a box next to the statement, "I have read and agree to the terms and conditions." (App.52; R. Doc. 15, at 3 ¶ 11.) In other words, it is not possible that Wolters played a single game



Appellate Case: 26-2459 Page: 31 Date Filed: 09/11/2026 Entry ID: 5682561

on Stake.us, much less played games "all day" for nearly two years as he alleged (*see* App.14–App.15; R. Doc. 1, at 14–15 ¶¶ 61, 65), without assenting to the Terms and Conditions. By holding otherwise without any opposing evidence from Wolters, the district court "improperly weighed the evidence and made a credibility determination." *Hamby*, 2026 WL 2223865, at *4.

This Court should reverse and hold that the unrebutted evidence established the fact of Wolters' acceptance of the Terms and Conditions, including the arbitration agreement.

### D. Wolters' argument that the arbitration clause is unconscionable must be decided by the arbitrator.

Although the district court did not reach or rule on Wolters' argument that the arbitration clause is unconscionable, to prevent further delay and unnecessary proceedings on remand, this Court should reach that issue and hold that Wolters' unconscionability arguments must be heard by the arbitrator. The parties clearly and unmistakably delegated gateway questions about the arbitration agreement's validity to the arbitrator, and that agreement is enforceable. *See supra*, Argument Section I.A.

## CONCLUSION

Sweepsteaks Limited respectfully requests that this Court reverse the district court's July 1, 2026 order and remand with instructions to grant Sweepsteaks Limited's motion to compel arbitration, stay this lawsuit, and order that all of Wolters' claims,



Appellate Case: 26-2459 Page: 32 Date Filed: 09/11/2026 Entry ID: 5682561

including all defenses and other issues related to his claims, be addressed in an individual arbitration proceeding.

Dated: September 10, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Aaron D. Van Oort*
Aaron D. Van Oort
Grace Rybak
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Aaron.VanOort@FaegreDrinker.com
Grace.Rybak@FaegreDrinker.com
Phone: (612) 766-7000
Fax: (612) 766-1600

*and*

A. Jeff. Ifrah
Kim Conroy
John Mikuta
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Jeff@IfrahLaw.com
KConroy@IfrahLaw.com
JMikuta@IfrahLaw.com
Phone: (202) 524-4140

*Counsel for Defendant – Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,272 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2013 using 14-point Garamond.

3. The brief has been scanned for viruses and it is virus free.

*/s/ Aaron D. Van Oort*
Aaron D. Van Oort

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Aaron D. Van Oort*
Aaron D. Van Oort