**NO. 26-2459**

*In the*

# United States Court of Appeals

*for the*

# Eighth Circuit

---

Chris Wolters,

Plaintiff – Appellee,

v.

Sweepsteaks Limited d/b/a Stake.us,

Defendant – Appellant.

---

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA
Case No. 0:25-cv-03280-JRT-JFD
Hon. John R. Tunheim

---

**APPELLANT'S ADDENDUM**

---

Aaron D. Van Oort
Grace Rybak
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Aaron.VanOort@FaegreDrinker.com
Grace.Rybak@FaegreDrinker.com
Phone: (612) 766-7000
Fax: (612) 766-1600

A. Jeff. Ifrah
Kim Conroy
John Mikuta
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
Jeff@IfrahLaw.com
KConroy@IfrahLaw.com
JMikuta@IfrahLaw.com
Phone: (202) 524-4140

Memorandum Order and Opinion,
filed July 1, 2026 (Dkt. 26) .................................................................... Add.1



Appellate Case: 26-2459 Page: 2 Date Filed: 09/11/2026 Entry ID: 5682562

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

CHRIS WOLTERS, *on behalf of himself and all those similarly situated*,

Plaintiff,

v.

SWEEPSTEAKS LIMITED, *d/b/a Stake.us*,

Defendant.

Civil No. 25-3280 (JRT/JFD)

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO COMPEL ARBITRATION**

---

Brant D. Penney, Garrett D. Blanchfield, Jr., Roberta A. Yard, **REINHARDT WENDORF & BLANCHFIELD**, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402; Daniel C. Hedlund, Daniel J. Nordin, Joseph Nelson, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Lee Owen and Vildan A. Teske, **TESKE LAW PLLC** 80 South Eighth Street, Suite 900, Minneapolis, MN 55402, for Plaintiff.

A. Jeff Ifrah, John Mikuta, and Kim Conroy, **IFRAH LAW PLLC**, 1717 Pennsylvania Avenue Northwest, Suite 650, Washington DC 20006; Abraham S. Kaplan, Andrew D. Parker, and Eric Zumbach, **PARKER DANIELS KIBORT, LLC**, 123 North Third Street, Suite 888, Minneapolis, MN 55401, for Defendant.

Plaintiff Chris Wolters brings this case on behalf of himself and a potential class, alleging that Defendant Sweepsteaks Limited d/b/a Stake.us ("Stake") has systematically violated Minnesota's consumer protection and gambling laws. Stake moves to compel arbitration on Wolters's claims, arguing that Wolters agreed to terms and conditions containing an arbitration clause.

The Court will deny the motion to compel because Stake has failed to carry its burden of proving the existence of a valid and enforceable arbitration agreement. Two independent rationales support this conclusion. First, Minnesota prohibits gambling activities like those Wolters alleges that Stake operates; and under Minnesota law, contracts entered into in contravention of state statute are void. Accordingly, the Court concludes—at this early stage of the litigation—that Stake has failed to prove that the terms and conditions to use its platform are a valid contract under Minnesota law. And while arbitration clauses are ordinarily severable from a contract found to be invalid in its entirety, the arbitration agreement in Stake's terms and conditions expressly depends on the validity of the rest of the contract. Therefore, the Court concludes that it cannot enforce the arbitration agreement, which has not proven to be valid as a matter of Minnesota contract law.

Second, the Court concludes that Stake has failed to establish that Wolters ever agreed to a contract of any kind with Stake. In seeking to do so, Stake presents only an affidavit from its founder, and an ambiguous screenshot that does not contain Wolters's name or any other relevant information. Because a party seeking to compel arbitration bears the burden of proving the existence of a contract—and Stake has not done so—the Court would not compel arbitration at this point, even absent any concerns regarding Minnesota's gambling laws, and would instead order a trial on the issue of contract formation.

For all these reasons, the Court will deny Stake's Motion to Compel Arbitration.

## BACKGROUND

### I. WOLTERS'S COMPLAINT

Wolters filed a Class Action Complaint against Stake on August 15, 2025. (Compl., Aug. 15, 2025, Docket No. 1.) Stake is "a real-money internet casino"—a website on which users "buy digital tokens, bet them on games of chance including, for example, virtual slot machines . . . and redeem any gain for cryptocurrency, which can, in turn, be converted to US currency—all in just a few clicks." (*Id.* ¶ 1.) Wolters alleges that Stake operates its virtual gambling enterprise in violation of Minnesota law. (Compl. ¶ 3.)

Wolters lodges five causes of action on behalf of himself and a potential class: (1) recovery of lost money under Minn. Stat. § 541.20, which allows individuals who lose money betting in unlawful gambling operations to sue to recover funds; (2) violation of Minnesota's Consumer Fraud Act, Minn. Stat. § 32F.69; (3) violation of Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44; (4) violation of Minnesota's False Statement in Advertising Law, Minn. Stat. § 325F.67; and (5) unjust enrichment. (Compl. ¶¶ 83–117.)

Wolters alleges that virtual gambling enterprises like Stake present concerns for those struggling with gambling addiction. Before discovering Stake, Wolters's "gambling problem never got as out of control because of Minnesota's gambling regulations. For instance, while [Wolters] would purchase pull-tabs . . . he could only purchase them in-person with cash and had to leave whenever the business . . . closed." (*Id.* ¶ 68.)

However, Wolters "could engage in gambling binges on Stake for over 24 hours at a time, using any money or credit he could access." (*Id.* ¶ 69.) Wolters gambled on Stake from April 2023 to February 2025 and lost over $80,000. (*Id.* ¶ 61.) He is currently in gambling addiction recovery. (*Id.*)

## II. STAKE MOVES TO COMPEL ARBITRATION

Stake now moves to compel arbitration. (Mot. to Compel. Arbitration, Nov. 14, 2025, Docket No. 12.) Stake asserts that when Wolters created his account on its gambling platform, he was required to assent to Stake's Terms and Conditions, which included a provision requiring the parties to arbitrate any disputes (hereinafter, the "Arbitration Agreement"). The Arbitration Agreement states:

> We Both Agree to Arbitrate. By agreeing to these Terms and Conditions, both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and Conditions . . . shall be referred to and finally resolved by arbitration[.]

(*See, e.g.*, Decl. of Edward Craven ("Craven Decl.") ¶ 18, Ex. B., Nov. 14, 2025, Docket No. 12-3.) Stake's founder, Edward Craven, attests that users were required to agree to the Terms at the times Wolters used Stake. Attached to Craven's declaration is a screenshot of a Stake account purportedly belonging to Wolters. (Docket Nos. 15–16.)

Wolters opposes the Motion to Compel, arguing that: (1) Stake's Terms and Conditions constitute a void contract because they are a contract for gambling services that are illegal in Minnesota; (2) Stake has not proven that Wolters ever agreed to the Terms and Conditions; and (3) the Arbitration Agreement is unconscionable.

## DISCUSSION

### I. STANDARD OF REVIEW

A party who believes that a dispute is subject to arbitration may move for an order compelling arbitration under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 3. In considering such a motion, the Court does not determine the merits of the substantive issues, but simply whether the parties have agreed to submit a particular grievance to arbitration. *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008). Specifically, the Court is limited to determining: (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). The Court may consider agreements stating arbitration terms whether or not those agreements are cited in the complaint. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017).

There is a strong federal policy in favor of enforcing arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But, critically, "a party cannot be compelled to arbitrate unless it has contractually agreed to be bound by arbitration." *Duncan v. Int.'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021). In other words, "a party who has not agreed to arbitrate a dispute cannot be forced to do so." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). "[T]he party seeking to compel arbitration . . . **bears the burden of proving** there was a valid and

enforceable agreement." *Duncan*, 20 F.4th at 402 (emphasis added).[1] "To determine whether a valid agreement to arbitrate exists," the Court "look[s] to the forum state's contract law[.]" *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019). In this case, Minnesota law controls.

## II. ANALYSIS

Wolters asks the Court to deny Stake's motion to compel arbitration for three reasons. First, Wolters argues that no valid contract came into existence between the two parties because Stake's Terms and Conditions violate Minnesota's statutes prohibiting gambling activities. Wolters reasons that because the Arbitration Agreement in the Terms and Conditions expressly referenced the validity of the rest of the contract, the Arbitration Agreement cannot be severed from the rest of the invalid contract. Second, Wolters argues that the terms of the Arbitration Agreement are unconscionable and thus unenforceable. And third, Wolters argues that Stake has not met its burden of proving that Wolters assented to Stake's Terms and Conditions. The Court concludes that Wolters's first and third rationales both prevail.

### A. Invalid Contract

An arbitration agreement shall not be enforced "upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Wolters argues that

---

[1] *Cf. Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.").

Stake's gambling activities are prohibited under Minnesota law, and accordingly, that its Terms and Conditions—which Wolters purportedly agreed to[2]—are void.

### 1. Severability

The Court must first determine whether—regardless of the legality of the **entire** contract—the specific arbitration provision can be severed and enforced.

"Challenges to the validity of arbitration agreements" under 9 U.S.C. § 2 "can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* The Supreme Court has held that only the former category "is relevant to a court's determination whether the arbitration agreement at issue is enforceable"; in other words, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

But just because "agreements to arbitrate are severable does not mean that they are unassailable." *Id.* at 71. "If a party challenges the validity under § 2 of the precise

[2] As will be analyzed further in section II.C., the Court concludes that Stake has also failed to prove that Wolters did, in fact, agree to the Terms and Conditions.

agreement to arbitrate at issue, the federal court must consider the challenge . . . ." *Id.* Accordingly, the Court's threshold inquiry here is whether Wolters's illegality argument —which implicates the validity of the entire Terms and Conditions—is an attack on the "validity . . . of the precise agreement to arbitrate." *See id*.

The Court concludes that Wolters's illegality attack is targeted specifically at the Arbitration Agreement and is not merely an attack on the entire contract. The Arbitration Agreement in this case states: "**By agreeing to these Terms and Conditions**, both you and Stake agree that any and all Disputes, including without limitation any question regarding the existence, validity, enforceability, or termination of these Terms and Conditions . . . shall be referred to and finally resolved by arbitration." (Craven Decl. ¶ 18, Ex. B.) In other words, the Arbitration Agreement is drafted in such a way that the parties' assent to arbitrate certain claims is **contingent** on the existence and validity of the "Terms and Conditions." Wolters's argument—that the Arbitration Agreement is invalid because the entire Terms and Conditions are invalid—does appear similar, on its face, to the type of attacks on arbitration agreements that are foreclosed by *Buckeye*. But the Court concludes that in this case, Wolters's argument is grounded in the precise wording of the Arbitration Agreement itself and therefore can support a claim that the Arbitration Agreement should not be enforced.

**2. Voidness**

Having concluded that Wolters levies a proper challenge to the specific Arbitration Agreement itself, the Court now turns to the merits of Wolters's argument. Wolters contends that Stake's Terms and Conditions (and therefore the Arbitration Agreement) are unenforceable under Minnesota law because they are a contract to engage in illegal gambling conduct. Accordingly, Wolters argues that the Arbitration Agreement cannot be enforced under 9 U.S.C. § 2.

In Minnesota, "a contract entered into in violation of a statute which imposes a prohibition and a penalty for the doing of an act, such as the pursuit of a business, profession, or occupation without procuring a license or permit required by law for the protection of the public, is void[.]" *Lew Bonn Co. v. Herman*, 135 N.W.2d 222, 225 (Minn. 1965).[3] And generally speaking, "Minnesota's statutory scheme limits the commercial operation of video games of chance and other gambling devices to federally recognized tribes with tribal-state compacts." *Matter of Running Aces Casino*, 30 N.W.3d 285, 291 (Minn. 2026) (citing Minn. Stat. §§ 299L.07, subd. 2(a)(b), 349.61, subd. 2, 609.75, subd. 4, 8.) Under Minnesota law, one who "sets up for use for the purpose of gambling . . . any gambling device," or "receives, records, or forwards bets or offers to bet or, with intent

[3] *See also Scott-Daniels Properties, Inc. v. Dresser*, 160 N.W.2d 675, 679 (Minn. 1968) ("Since the purpose of the act is to protect the public by preventing incompetent persons from assuming to act in that particular capacity, a contract of an unlicensed person is invalid.").

to receive, record, or forward bets or offers to bet, possesses facilities to do so," has committed a gross misdemeanor. Minn. Stat. § 609.76, subds. 1(4), (7). Moreover, one who "makes a bet" or "sells or transfers a chance to participate in a lottery," is also guilty of a misdemeanor. Minn. Stat. § 609.755(1)–(2). In Chapter 349, the state legislature sought "to regulate lawful gambling." Minn. Stat. § 349.11. To that end, the state established extensive permitting requirements for certain organizations and created the Minnesota Gambling Control Board to oversee lawful gambling. *See* Minn. Stat. § 349.151.[4]

Wolters's Complaint alleges that on Stake's platform, individuals can purchase Stake cash, gamble with it, and redeem it as cryptocurrency. (Compl. ¶ 52.) Stake's Terms and Conditions—which acknowledges that gambling is unlawful in certain states—provide that individuals who live outside the United States, or in a certain list of states, should not use the platform. (*Id.* ¶ 54.) However, Minnesota is not included in that list of states, thus "represent[ing] to consumers that its gambling platform is legal in Minnesota." (*Id.* ¶ 55.)

[4] On November 5, 2025, the Minnesota Attorney General published statement to websites that offer gambling activities in Minnesota, advising that "social sweepstakes casinos that use virtual coins to play casino games for cash and prizes . . . are prohibited under Minnesota's laws." Office of Minnesota Attorney General Keith Ellison, *Attorney General Ellison directs illegal gambling websites to stop offering services in Minnesota* (Nov. 5, 2025), www.ag.state.mn.us/Office/Communications/2025/11/05_IllegalGamblingWebsites.asp.

"The party seeking to compel arbitration bears the burden of proving the existence of a 'valid contract that binds [the parties] to arbitrate their dispute.'" *Schlacks v. Chheda*, 174 F.4th 1061, 1066 (8th Cir. 2026) (alteration in original) (quoting *Duncan*, 20 F.4th at 402).[5] And in Minnesota, "a contract entered into in violation of a statute which imposes a prohibition and a penalty for the doing of an act . . . without procuring a license or permit required by law for the protection of the public . . . is void . . . ." *Herman*, 135 N.W.2d at 225. Wolters argues that Stake's terms and conditions are a contract for activities that violate Minnesota's gambling statutes, and therefore, is not a contract at all. (*See* Compl. ¶¶ 56–60.) And because, as the Court concluded above, the Arbitration Agreement is preconditioned on assent to the entire Terms and Conditions, Wolters argues that the specific arbitration provision is also void and unenforceable.

Stake's briefing does not engage with the substance of Wolters's arguments on the contract's purported illegality. Rather, Stake argues that it is premature to wade into "the central underlying issue in this case: whether [Stake's] games are unlawful gambling." (Def.'s Reply Mem. at 2, Dec. 19, 2025, Docket No. 18.) Stake reasons that Wolters's arguments are an attack on the "enforceability," not "validity," of the Terms and Conditions—and that the Court's inquiry here should be limited to whether there was

[5] Stake also relies on a provision in the arbitration agreement that delegates threshold questions to the arbitrator itself—however, "[t]he Supreme Court has made clear that, although parties may agree to delegate arbitrability questions, this delegation is contingent on the existence of a valid arbitration agreement." *Schlacks*, 174 F.4th at 1066 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)).

"offer, acceptance, and consideration," sufficient to form a valid contract. *See Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022) (discussing elements of contract formation under Minnesota law.) Stake relies in part on a Minnesota Supreme Court decision from 1909 in which the Court stated that it would "decline to enforce" illegal contracts, *Holland v. Sheehan*, 122 N.W.1, 2 (Minn. 1909). Stake argues that holding a contract to be "unenforceable" is different than treating the contract as if it never existed.

The Court concludes that, at this stage, Stake has failed to prove the existence of a valid Arbitration Agreement by a preponderance of the evidence. First, the Court notes that Stake has failed to present any argument addressing the substance of Wolters's contention that the Terms and Conditions are an illegal contract because they violate Minnesota's gambling statutes. Accordingly, in making this threshold determination, the Court is left only to consider the facts alleged in the Complaint.

Moreover, the Court is not convinced by Stake's argument that a contract which contravenes Minnesota statute is simply "unenforceable," rather than "invalid." The Minnesota Supreme Court has repeatedly used the word "void" to refer to contracts that contravene statutory schemes. *See, e.g.*, *Isles Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 94 (Minn. 2006) ("[E]ntering into a contract in violation of a statute generally voids the contract[.]") And generally, void contracts are treated as if they never existed

at all. *Contract, Black's Law Dictionary* (12th ed. 2024) (defining "void contract" as a "contract that is of no legal effect, so there is really no contract in existence at all").[6]

In sum, if Stake's Terms and Conditions are a contract entered into in violation of Minnesota's gambling statutes, the Court must treat that contract as invalid and nonexistent. Further, because the specific Arbitration Agreement depends on the parties' assent to the Terms and Conditions, it cannot be severed and is likewise void. Wolters has alleged facts demonstrating that Stake's Terms and Conditions are an illegal gambling operation, and Stake has not yet presented any evidence to the contrary. The Court therefore concludes—on the evidence before it at this stage[7]—that the Terms and Conditions are not a valid contract, and that Stake's Motion to Compel must be denied.

**B. Proof of Existence of Contract**

Wolters also opposes Stake's Motion to Compel by arguing that Stake simply has not proven that Wolters ever agreed to Stake's Terms and Conditions.

As previously noted, a party seeking to compel arbitration must prove the existence of a valid contract. *Duncan*, 20 F.4th at 402. "If the motions record reveals a material issue of fact" regarding whether a valid agreement exists, "the [Federal

---

[6] *See also Day v. Case Credit Corp.*, 427 F.3d 1148, 1153 (8th Cir. 2005) ("[T]he forged purchase agreements were void from their inception," and the district court could not "reform the nonexistent written contracts").

[7] The Court emphasizes that its determinations in this Order are based on Wolters's Complaint and the parties' memoranda on this Motion to Compel Arbitration. The Court has not ruled on the merits of Wolters's claims, and this Order does not control such future rulings.

Arbitration Act] maintains that the court move summarily to trial." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 743 (8th Cir. 2014); *accord* 9 U.S.C. § 4.

The evidence Stake offers to prove the existence of a contract with Wolters is not sufficient to carry its burden. As evidence, Stake submits a declaration of its founder, Edward Craven. Craven attests:

> During the Relevant Time Period, [Stake] required existing users to confirm that they had read and agreed to [Stake's] updated Terms and Conditions by checking a box next to the following statement, "I have read and agree to the terms and conditions." A user could not create an account without checking the box indicating that the user read and agreed to the Terms and Conditions.

(Craven Decl. ¶ 11.) Craven also attests that Exhibit A to his declaration is "a true and accurate copy of [Stake's] internal account record associated with [Wolters]." (*Id.* ¶ 13.) This screenshot was submitted as Exhibit A:




(*Id* ¶ 13, Ex. A.)

However, the screenshot does not contain Wolters's name at all, nor prove that he assented to any contract. Craven's statement that Wolters presumptively would have

had to sign the Terms and Conditions during the time period he used Stake, accompanied with this vague screenshot, is not sufficient to prove that any contract was formed.

For these reasons, the Court concludes Stake has failed to meet its burden of demonstrating that Wolters agreed to the Arbitration Agreement, and that disputes of fact remain as to whether any contract was formed. Therefore, even if the Court would have rejected Wolters's illegality arguments, the Court would have ordered a limited trial on the issue of contract formation.[8] 9 U.S.C. § 4.[9]

**CONCLUSION**

On the limited record before it at this stage, the Court concludes that the parties' contract containing the Arbitration Agreement is void because it violates Minnesota gambling laws. The Court further concludes that Wolters's challenge to the validity of the Arbitration Agreement is specific to the arbitration-related provision itself and is not merely a challenge to the validity of the entire contract.

---

[8] Wolters also argues the Arbitration Agreement is unconscionable. *See generally Maslowski v. Prospect Funding Partners LLC.*, 994 N.W.2d 293, 306 (Minn. 2023) (Moore, III, J., concurring) (discussing applicable unconscionability standards under Minnesota law). Because the Court concludes that Stake has failed to prove that a valid Arbitration Agreement exists—both on grounds of illegality and for failure to present evidence sufficient to demonstrate that Wolters agreed to the Terms and Conditions—the Court need not address Wolters's unconscionability arguments.

[9] *See also Neb. Mach. Co.*, 762 F.3d at 743 ("At times, a district court may 'decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.' . . . However, if the motions record reveals a material issue of fact, the FAA maintains that the court move summarily to trial." (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014))).

The Court further concludes that Stake has not presented evidence sufficient to prove that Wolters ever agreed to the Terms and Conditions, which constitutes an additional reason to deny Stake's motion at this stage.

Accordingly, the Court will deny Stake's Motion to Compel Arbitration.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (Docket No. [12]) is **DENIED.**

DATED: July 1, 2026
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge